O

# United States District Court
# Central District of California

| | |
|---|---|
| IN RE KENNY G. ENTERPRISES, LLC, | Case No. 8:14-cv-00246-ODW |
| Debtor. | Bankruptcy Case No. 8:11-bk-24750-TA |
| THOMAS H. CASEY, | Adversary Case No. 8:13-ap-01271-TA |
| Plaintiff/Appellee, | |
| v. | **AMENDED ORDER REVERSING** |
| DOUGLAS ROTENBERG; TUONG-VY TON, | **AND REMANDING** |
| | **BANKRUPTCY COURT'S** |
| Defendants/Appellants. | **DECISION** |

## I. INTRODUCTION

The Bankruptcy Code, found in Title XI of the United States Code, provides a bankruptcy trustee with a panoply of powers to discharge her statutory duties to administer the estate. These powers include the ability to challenge certain alleged fraudulent transfers so that the trustee can bring the property back into the estate for the benefit of outstanding creditors. But these powers have their limits.

Congress codified one such avoidance provision at 11 U.S.C. § 544(b). The section provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." § 544(b)(1). Generally, this section

means that a trustee may assert standing on behalf of an existing unsecured creditor to invoke state law to set aside a fraudulent transfer. But whether Congress intended § 544(b) to apply to transfers occurring after the filing of a bankruptcy petition is a divisive, very unsettled issue nationwide given Congress's apparent silence on the section's temporal limits.

The bankruptcy court in this case found that the Trustee, Appellee Thomas H. Casey, could employ the section to avoid a postpetition transfer. But after interpreting the statute consistent with relevant legislative history, existing case law, and general bankruptcy principles, the Court finds that § 544(b) only applies to prepetition transfers. The Court consequently **REVERSES** the bankruptcy court's decision and **REMANDS** for further proceedings consistent with this decision.

## II.  FACTUAL BACKGROUND

In this highly unique situation, the Trustee seeks to set aside an alleged fraudulent transfer—the sale of a residential property formerly part of the bankruptcy estate—that occurred both postpetition and postconversion.

*1.  Kenny G. Enterprises files a voluntary Chapter 11 petition*

On October 24, 2011, Kenny G. Enterprises, LLC—a Nevada limited-liability company ("Debtor")—filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Central District of California. *In re Kenny G. Enters.*, No. 8:11-bk-24750-TA (Bankr. C.D. Cal. pet. filed Oct. 24, 2011); (Excerpt of Record ("ER") 0475–481). The Debtor disclosed its property located at 10 Horseshoe Court in Hillsborough, California ("Hillsborough Property") as one of its assets valued at $1.2 million. (ER 0507.)

The Debtor subsequently filed a Plan of Reorganization. (ER 0520–33.) The Plan provided that the Debtor would continue to use the Hillsborough Property as residential rental property to provide income for the Chapter 11 estate. (ER 0529.) Further, confirmation of the Plan would vest all property of the estate in the Debtor. / / /

(ER 0530.) On January 9, 2013, the bankruptcy court confirmed the Plan of Reorganization. (ER 0534–39.)

### 2. *Debtor sells Hillsborough Property to Appellants*

On or around March 26, 2013, Appellants Douglas Rotenberg and Toung-Vy Ton ("Rotenbergs" or "Appellants") purchased the Hillsborough Property for $3,156,000.00—a price that admittedly "far exceed[ed] the value of the property based on the documents filed in the Debtor's bankruptcy proceeding." (ER 0047.) A grant deed was recorded in the San Mateo County Recorder's Office, which transferred the Hillsborough Property from the Debtor to the Rotenbergs. (ER 0034, at ¶ 30.)

The title company handling the transfer then deposited $1,897,126.22 of the sale proceeds into Debtor's bank account on the day the transaction closed. (*Id.* ¶ 47.) That same day, the Debtor wired $1,714,900 to Freedom Investment, Corp., which the Trustee alleges is just a shell company formed 21 days earlier by the Debtor's managing member, Kenneth Ghabrib. (*Id.* at ¶¶ 49–50, 52–55.) The Property was the only income-generating asset in the Chapter 11 estate. (*Id.* at ¶ 27.)

### 3. *Bankruptcy court converts the case to Chapter 7*

On August 14, 2013, the bankruptcy court converted the case from Chapter 11 bankruptcy to Chapter 7. (ER 0540–42.) The court also issued a temporary restraining order preventing the Debtor or those people acting in concert with it from distributing any property to anyone other than the Trustee. (ER 0541.) The bankruptcy court further ordered that the Debtor immediately transfer any funds from the Hillsborough Property sale to the Trustee. (*Id.*)

### 4. *Trustee files suit against Appellants seeking to set aside transfer*

On August 21, 2013, the Trustee filed an adversary proceeding in the bankruptcy court seeking to set aside the Hillsborough Property sale as a fraudulent

///

///

transfer.[1]  (ER 0019–30.)  On October 4, 2013, the Trustee amended his Complaint, endeavoring to avoid the transfer under California Civil Code section 3439.04 and asserting standing to pursue the claim on behalf of an existing, unsecured creditor under 11 U.S.C. § 544(b).

On November 6, 2013, the Rotenbergs moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy 7012(b).  (ER 0041–257.)  They argued, among other things, that the Trustee could not void the Hillsborough Property sale, because 11 U.S.C. § 544(b) does not apply to postpetition transfers.

On February 10, 2014, the bankruptcy court denied the motion with prejudice. (ER 0347–58.)  In its tentative ruling, the court recognized that the "majority rule appears to be that section 544(a) and (b) powers are limited and may not be used by a trustee to avoid a post-petition transfer."  (ER 0354.)  But the court also noted authority on the other side of the split in which courts have held that a trustee could avoid a postpetition transfer under § 544.  (ER 0354–55.)

The court ultimately interpreted § 544(b) as applying to both pre- and postpetition transfers for three main reasons: (1) § 549—the section specifically dealing with postpetition transfers—is confined to "property of the estate," so a trustee cannot use that section for property that has revested in the debtor postconfirmation; (2) a narrow reading of § 544(b) would render a trustee "largely powerless to deal with post-confirmation misbehavior"; and (3) even measured by § 544's narrow statute of limitations, the Trustee timely brought the adversary proceeding. (ER 0356.)  The court further observed that since a single trustee could sue to avoid the transfer under state law, "it is hard to make sense of a rule that would hold that the trustee, who is the representative of all creditors, should be powerless to likewise sue."

---

[1] Note that whether the Hillsborough Property sale actually involved fraud is not at issue in this appeal, as Appellants challenge the bankruptcy court's denial of their motion to dismiss on § 544(b) grounds.  The Court thus assumes that the sale was fraudulent such that one must determine whether the Trustee may assert standing on behalf of an existing unsecured creditor under § 544(b).

(*Id.*) The court concluded that it preferred to believe that "for every wrong there is a remedy." (*Id.*)

    5.    *Rotenbergs appeal to this Court*

On February 18, 2014, the Rotenbergs filed a Notice of Appeal in the bankruptcy court. (ER 0359–75.) Two days later, they moved for leave to file an interlocutory appeal before this Court under Bankruptcy Rules 8001(b) and 8003. (ECF No. 1.) On March 6, 2014, the Court granted Appellants leave to appeal, confining the appeal to the issue of whether 11 U.S.C. § 544(b) applies to postpetition transfers.

The Court timely received all briefs and took the appeal under submission. The Court now reverses and remands the bankruptcy court's decision.

## III.   APPELLATE JURISDICTION

The Court has jurisdiction to hear this bankruptcy-court appeal under 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001(b).

## IV.   LEGAL STANDARD

In reviewing a bankruptcy court's decision, a district court reviews legal determinations de novo. *In re Olshan*, 356 F.3d 1078, 1083 (9th Cir. 2004). This means that the court reviews the legal issues involved "independently and without deference." *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010). But the district court must accept factual findings unless clearly erroneous, that is, the court must be "left with the definite and firm conviction that a mistake has been committed." *Id.* at 1109 (internal quotation marks omitted); Fed. R. Bankr. P. 8013.

## V.   DISCUSSION

The Court granted the Rotenbergs leave to file an interlocutory appeal on one issue, which ultimately serves as a threshold to the Trustee bringing his fraudulent-transfer action: whether § 544(b) applies to postpetition transfers.

The Rotenbergs argue that § 544 is limited by its own terms to only prepetition transfers. They contends that neither § 544(a) nor § 544(b) provide for the avoidance

1  of postpetition transfers, as the sections only speak of transfers with respect to
2  "property of the debtor" and not "property of the estate." They aver that had Congress
3  intended for § 544(b) to address postpetition transfers, it would have included
4  language consistent with that intent. The omission of any reference to postpetition
5  transfers, Appellants urge, should be understood as a purposeful exclusion under the
6  doctrine of *expresio unius est exclusion alterius*. Further, they assert that had
7  Congress designed § 544(b) to apply to postpetition transfers, it would have included
8  a statute of limitations keyed to the date of the transfer as it did in § 549—a section
9  which explicitly addresses postpetition transfers. Instead, the Rotenbergs argue, by
10 triggering the statute of limitations as of the commencement of the case or the
11 appointment of the trustee, the implication is that the transfer has already occurred by
12 the time the debtor files the petition.
13      Appellants also point out that it is well settled that a trustee has no standing
14 generally to sue third parties on behalf of the estate's creditors but can only assert
15 claims held by the debtor estate itself. Contrary to the bankruptcy court's observation,
16 they contend that the trustee is not authorized to pursue every action a creditor may
17 pursue. Finally, the fact that a trustee may have no other recourse should not allow
18 expansion of the trustee's statutory powers beyond their statutory scope, particularly
19 where courts have historically limited the trustee's reach.
20      While the Rotenbergs contend that the clear majority of courts have interpreted
21 § 544(b) as applying only to postpetition transfers, the Trustee argues that there is
22 only one published opinion that squarely is on point with the unique facts of this case
23 involving an alleged fraudulent transfer that occurred postconfirmation and
24 preconversion: *In re Seminole Walls & Ceilings Corp.*, 446 B.R. 572 (Bankr. M.D.
25 Fla. 2011). The Trustee asserts that as in *Seminole Walls & Ceilings Corp.*, since he
26 cannot avail himself of §§ 548 and 549's avoidance powers, he is only left with
27 § 544(b) and applicable state law. The Trustee also contends that the Rotenbergs are
28 attempting to insert a temporal limitation into § 544(b) that is not supported by the

statute's language and legal precedent. Rather, he argues that the construction of § 544(b)'s plain language is that if a creditor of the debtor who existed at the time of the transfer could void a transfer, the trustee may also void the transfer under applicable state law.

### A. Statutory interpretation

While § 544(b)'s plain language is ambiguous as to when the statute applies, the context in which Congress enacted the section as well as relevant legislative history strongly suggest that Congress only intended § 544(b) to apply to prepetition transfers.

#### 1. Plain language of § 544(b)

In interpreting a statute, a court's role is to ascertain Congress's intent in drafting the statute. *Flint v. State of Cal.*, 594 F. Supp. 443, 447 (E.D. Cal. 1984). The starting point for statutory interpretation is always the existing statutory text. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). When the statute's words are clear, the sole function of the court is to enforce it according to its terms unless it would lead to "absurd" results. *Id.*

Section 544(b) provides in relevant part,

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title. . . .

The phrase "an interest of the debtor" is crucial to understanding § 544(b)'s scope. The Bankruptcy Code provides that the filing of a petition creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Postpetition, all property that used to be the debtor's property then transmutes into "property of the estate." But after a bankruptcy court confirms a reorganization plan, the property of the estate

revests in the debtor, thereby making the property again property of the debtor. 11 U.S.C. § 1141(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."). Section 544(b) therefore can only potentially apply to transfers that occur either prepetition or postconfirmation.

Since the Hillsborough Property sale occurred postconfirmation, the residence had revested in the Debtor and was no longer "property of the estate." This is why the Trustee may not employ § 549 to avoid the transfer. *See* § 549 (only permitting a trustee to avoid "a transfer of property of the estate").

Congress included no explicit temporal limitation within § 544(b) that would suggest whether it could apply to transfers occurring after the filing of a bankruptcy petition. Congress simply affirmatively stated that a trustee may avoid a transfer "of an interest in property of the debtor" that is avoidable under applicable state law.[2] But Congress's reference to "a creditor holding an unsecured claim" suggests that at some triggering point there already exists a secured creditor who holds a claim under state fraudulent-transfer law. The Legislature also referenced the debtor's actions in the past tense by using the word "incurred," which could potentially mean that the debtor has made the alleged fraudulent transfer in the past—the past most likely being before filing a bankruptcy petition. This timing ambiguity therefore does not render § 544(b) clear on when a trustee gains and loses her ability to assert avoidance claims on behalf

///

---

[2] The "applicable state law" here is California Civil Code section 3439.04, which provides in part,
>A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.

Cal. Civ. Code § 3439.04(a)(1). But whether this section actually applies to this action is beyond the scope of this appeal. It is only important for present purposes to determine whether the Trustee may properly assert standing on behalf of an existing secured creditor under § 544(b) to then bring a claim under Civil Code section 3934.04. In essence, § 544(b) serves solely as a conduit for importing state fraudulent-transfer law into the Bankruptcy Code.

of existing unsecured creditors. The Court must accordingly open the rest of its statutory-construction toolbox to resolve this issue.

### 2. *Interpretation vis-à-vis other avoidance sections*

The Ninth Circuit has made clear that in interpreting a statute, a court must consider more than simply the statute in isolation; rather, a court must derive context from the relevant statutory provisions and read them as a whole." *In re Rufener Constr., Inc.*, 53 F.3d 1064, 1067 (9th Cir. 1995).

The first part of section 544 provides,

> (a) The trustee shall have, *as of the commencement of the case*, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a) (emphasis added). These "strong-arm powers" allow a trustee to assert avoidance claims held by hypothetical creditors or bona fide purchasers. *See In*

*re Weisman*, 5 F.3d 417, 420 (9th Cir. 1993).  Congress's inclusion of the phrase "as of the commencement of the case" strongly suggests that it only meant § 544 to apply to prepetition transfers.  Since the trustee has these powers at petition filing, the transfer must necessarily have already occurred.

Moreover, since the strong-arm powers exist at the commencement of the case, and since § 544(a) is limited to "any transfer of property of the debtor," these powers could only ever apply to prepetition transfers.   Therefore, by referring to transfers of "property of the debtor," Congress necessarily understood the transfer to be the debtor's own property, i.e., not property of the estate.  For the transfer to relate to the debtor's own property, and for the statutory lien created by § 544(a) to exist as of the commencement of the case, the only possible way for that to occur is via a prepetition transfer.

While Congress certainly could have included two subsections within § 544 that included different temporal limitations, it would be a rather strange drafting result.  It would be most logical for both subsections (a) and (b) to apply to only prepetition transfers because if one subsection were to apply to postpetition transfers, Congress would have set out that subsection on its own.  This is especially true since Congress specifically included a section titled "Postpetition transactions" which provides that a "trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case."  11 U.S.C. § 549(a).  Thus, since Congress already drafted a section explicitly dealing with postpetition transactions, Congress presumably would have included other postpetition avoidance provisions within that same section.  That Congress left subsection (b) together with subsection (a)—the subsection dealing only with prepetition transactions—bespeaks Congress's understanding that subsection (b) necessarily solely applies to prepetition transfers as well.

The fact that Congress specifically included a section dealing with postpetition transactions suggests that it solely intended for that section to govern transfers

occurring after the filing of a bankruptcy petition. Section 549's breadth undergirds that conclusion. It generally applies to allow a trustee to set aside any postpetition transfer of estate property that is not authorized by the Bankruptcy Code or a bankruptcy court. Congress did not narrowly draft § 549 in such a way that it would be reasonable to think that it only applies to some postpetition transactions, leaving room for other sections to fill the gap. Rather, the fact that Congress used such sweeping language demonstrates that Congress envisioned § 549 as the sole tool for avoiding postpetition transfers.

Also telling are the differences between the statutes of limitations applicable to §§ 544 and 549. Section 546 provides the limitations period for a § 544 action:

> An action or proceeding under section 544 . . . may not be commenced after the earlier of--
> (1) the later of--
> (A) 2 years after the entry of the order for relief; or
> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). This means that the statute of limitations begins to run when the debtor files a bankruptcy petition. *In re IRFM, Inc.*, 65 F.3d 778, 780 (9th Cir. 1995). But § 549 has its own statute of limitations, which is keyed to the date of the transaction sought to be avoided: "An action or proceeding under this section may not be commenced after the earlier of . . . two years after the date of the transfer sought to be avoided; or . . . the time the case is closed or dismissed." 11 U.S.C. § 549(d). As one bankruptcy court remarked, "Were section 544(b) meant to apply to post-petition transfers, it would have made little sense to limit the trustee to recovering those transfers, avoidable under non-bankruptcy law, which were made only within two

1  years from the time of the trustee's appointment." *In re Sattler's, Inc.*, 73 B.R. 780, 790–91 (Bankr. S.D.N.Y. 1987). Rather, a "statute of limitations such as that contained in section 549 and linked to the making of the transfer would necessarily have been provided." *Id.*

This reasoning is persuasive in discerning Congress's intent—notwithstanding the bankruptcy court's reasoning that "just because the limitation is tighter when measured from the petition[,] this is hardly a reason to conclude the cause of action does not arise at all." (ER 356.) If Congress understood § 544(b) to apply to postpetition transactions, then there would be no reason for it to link its statute of limitations to the filing of the petition. The fact that Congress did in fact establish such a limitations period strongly suggests that Congress understood the filing of the petition as a cut off for potential actionable transfers. This result does not unnecessarily hamper the trustee's avoidance powers; that is not the Court's goal. Instead, the objective is to determine Congress's intent using whatever statutory clues it left behind. This indication provides cogent proof that Congress intended for all of § 544 to apply only to prepetition transfers.

### 3. *Legislative history*

The Court has delved into the Bankruptcy Code's labyrinthine legislative history in search of some indication that Congress understood § 544(b) to apply postpetition. Yet the Court has not unearthed anything that would speak to Congress's understanding of the section's temporal application. *See* H.R. Rep. 95-595, 370, 1978 U.S.C.C.A.N. 5963, 6326 (noting that Congress derived § 544(b) from former § 70e and that the section follows the Supreme Court's decision in *Moore v. Bay*, 284 U.S. 4 (1931)—a case not relevant to this appeal); S. Rep. 95-989, 85, 1978 U.S.C.C.A.N. 5787, 5871 (same); *see also Buffum v. Peter Barceloux Co.*, 289 U.S. 227, 231 n.1 (1933) (setting forth the full text of prior § 70e).

But the legislative history relating to § 549 reveals that Congress recognized that section as solely governing the province of postpetition transfers. Both the Senate

and House reports state that the section "permits the trustee to avoid transfers of property that occur after the commencement of the case." S. Rep. 95-989, 90, 1978 U.S.C.C.A.N. 5787, 5876; H.R. Rep. 95-595, 375, 1978 U.S.C.C.A.N. 5963, 6331.

The statutory construction, context in which § 544 appears in the Bankruptcy Code, and legislative history all strongly suggest that Congress intended § 544(b) to only apply to prepetition transfers.

**B.     Existing § 544(b) case law**

The bankruptcy court recognized that the "majority rule appears to be that section 544(a) and (b) powers are limited and may not be used by a trustee to avoid a post-petition transfer." (ER 0354 (citing 5-544 Collier on Bankruptcy § 544.01 (16th ed.) ("Avoidance of postpetition transfers is governed by section 549.")).)

The Rotenbergs cite many cases generally dealing with a trustee attempting to set aside fraudulent transfers via § 544. But as the Trustee correctly notes, many of these cases are distinguishable due to the unique factual position of this case: a transfer that occurred postconfirmation so that the Hillsborough Property revested in the Debtor and ceased being property of the estate.

For example, several courts have found that § 544(b) does not apply to postpetition transactions, but the cases at issue only involved transfers that occurred postpetition but preconfirmation, that is, the property was still part of the estate. *See, e.g.*, *In re Leonard*, 454 B.R. 444, 459 (Bankr. E.D. Mich. 2011) ("The Trustee's claims based on Michigan's fraudulent transfer statutes are made through Bankruptcy Code § 544(b)(1), and the Trustee's avoidance power under that section are also limited to pre-petition transfers."); *In re Metro. Cosmetic Reconstructive Surgery P.A.*, 125 B.R. 556, 557 (Bankr. D. Minn. 1991); *In re Sattler's, Inc.*, 73 B.R. 780, 790–91 (Bankr. S.D.N.Y. 1987) (finding that § 544(b) did not apply to postpetition transfers, because Congress did not include a statute of limitations keyed to the transaction date like it did in § 549).

/ / /

Other cases in which courts have limited § 544(b) to prepetition transfers are unclear on whether the property had revested in the debtor, i.e., whether the courts had yet confirmed the reorganization plan. *See, e.g.*, *In re Branam*, 247 B.R. 440, 444 (Bankr. E.D. Tenn. 2000); *In re Schneiderman*, 251 B.R. 757, 763 (Bankr. D.D.C. 2000) ("Congress specifically addressed postpetition transfers of property of the estate in 11 U.S.C. § 549. It is likely that it would have similarly expressly addressed postpetition transfers of property of the debtor had it wished such transfers to be potentially avoidable by a trustee."). Nonetheless, the courts' reasoning in these cases is persuasive albeit set against a different factual posture than this case.

There are cases factually on point with this case in which courts have similarly limited § 544(b)'s reach to only transactions occurring before the filing of a bankruptcy petition. *E.g.*, *In re Troutman Enters., Inc.*, 356 B.R. 786, at *9–10 (B.A.P. 6th Cir. 2007); *In re Centennial Textiles, Inc.*, 227 B.R. 606, 610 (Bankr. S.D.N.Y. 1998). But the limited analysis in these cases does not conclusively establish one way or the other whether § 544(b) applies to postpetition transfers.

The Trustee relies heavily on the Bankruptcy Court for the Middle District of Florida's decision in *In re Seminole Walls & Ceilings Corp.* That case involved a fraudulent transfer that, just like this case, occurred postpetition and postconfirmation. 446 B.R. at 592–93. But just like other cases cited above, this opinion provided no analysis indicating why § 544(b) applied; the court just simply applied the section without any discussion. *See id.* at 597 (applying Florida fraudulent-transfer law via § 544(b)). Given the dearth of reasoning in *Seminole Walls & Ceiling Corp.*, the Court is not persuaded that § 544(b) applies to postpetition transfers simply because some courts have applied it that way. *See also In re Guillot*, 250 B.R. 570, 601–02 (Bankr. M.D. La. 2000) (finding that § 544(a) applied to postpetition transfers because "§ 549 simply does not work to give the trustee any relief in this proceeding, but § 544(a) does").

/ / /

Distilling this rather spartan case law, the Court can discern only a few points that have ungirded previous § 544(b) decisions. Courts finding that the section does not apply to postpetition transfers have pointed to the statute of limitations in § 546 like this Court did above, finding that triggering the limitations period on the filing of the petition bespeaks Congress's intent to limit § 544 to prepetition transfers. And courts applying § 544(b) to postpetition transfers do so out of frustration for the trustee not having any other adequate remedy to set aside a postconfirmation fraudulent transfer. Since Congress likely did not intend for courts to selectively apply § 544(b) in a results-driven manner, the Court finds most persuasive the courts that have limited § 544 to prepetition transfers.

**C.    Dealing with postconfirmation "misbehavior"**

The bankruptcy court observed that applying § 544(b) to only prepetition transfers results in a "narrow reading . . . [that] renders the trustee after conversion largely powerless to deal with post-confirmation misbehavior." (ER 0356.) Other courts have echoed this concern and used the apparent gap in trustee avoidance powers to interpret § 544 as applying postpetition as well as prepetition. *See, e.g.*, *Guillot*, 250 B.R. at 601–02.

Limiting § 544(b) to only prepetition transfers may take one arrow out of the trustee's quiver, but it does not leave a trustee "powerless to deal with post-confirmation misbehavior." Congress provided a trustee with a veritable arsenal of avoidance powers in the Bankruptcy Code to deal with alleged fraudulent transfers. *See* §§ 542–49. That these sections only apply at certain points in time is not surprising—that is simply Congress's intent. In fact, Congress specifically included a section to deal with alleged estate-property fraudulent transfers that occur postpetition—§ 549—though it does not apply postconfirmation when the property then transmutes back into the debtor's property.

Congress also vested bankruptcy courts with broad powers to enforce reorganization plans, including the ability to direct the debtor or others to transfer

property as necessary to carry out the plan. 11 U.S.C. § 1142. Moreover, if the bankruptcy court discovers that a debtor procured a reorganization plan by fraud, the court may revoke the plan within 180 days and issue protective measures. *Id.* § 1144.

This case represents a Frank-Abagnale-esque transfer that escapes the trustee's reach under the Bankruptcy Code as Congress has currently written it. The transfer occurred postpetition, so § 544(b) does not apply. It also occurred postconfirmation, thereby evading § 549. The bankruptcy court never revoked the reorganization plan—which also did not require bankruptcy-court approval for the sale of the Hillsborough Property—so § 1144 provides no relief. Congress may well recognize the window it has left open in a case like this one and enact a statute to close it. But until then, the Court must apply the Bankruptcy Code uniformly and as Congress intended it.

### D. Limited trustee power

Appellants also correctly point out that while a trustee's powers under the Bankruptcy Code are undoubtedly broad, they are not unlimited. Ever since the Supreme Court's decision in *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416 (1972), it has been "well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) (internal quotation marks omitted) (noting that this holding in *Caplin* still remains valid law under the current version of the Code).

Thus, while "a single creditor might be able to sue to avoid this post confirmation transaction under state law" (*see* ER 0356), that does not necessarily mean the trustee can likewise assert standing to challenge the transfer. The trustee represents the bankruptcy estate—not its creditors—except where Congress specifically vested the trustee with avoidance powers. As the Court has interpreted, § 544 is an inch too short for the Trustee to reach the Hillsborough Property transfer.

/ / /

/ / /

## VI. CONCLUSION

For the reasons discussed above, the Court finds that § 544(b) only applies to prepetition transfers and accordingly that a trustee may not invoke § 544(b) to reach postconfirmation transfers like the Hillsborough Property sale. The Court thus **REVERSES** the bankruptcy court's decision and **REMANDS** for further proceedings consistent with this Order. The Clerk of Court shall enter judgment accordingly as required by Rule 8016(a) and close this case.

**IT IS SO ORDERED.**

June 24, 2014

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**